MATTIE J. STORY, a widow, KATE AGNES STORY BURCH and Husband, LENA M. STORY, W. L. STORY, JR., and EDWARD R. STORY, a minor, by his Natural Guardian and next friend, Mattie J. Story, a widow, *Appellants*, v. FIRST NATIONAL BANK & TRUST COMPANY IN ORLANDO, a Corporation, Individually and as Executor and as Trustee Under the Will of W. L. Story, Sr., deceased, *Appellee.*

139 So. 179.

En Banc.

Opinion filed November 4, 1931.

Petition for rehearing denied December 9, 1931.

400

*W. O. Anderson* and *G. P. Garrett* for Appellants;
*Maguire & Voorhis* and *Giles & Gurney*, for Appellee.

ELLIS, J.—On March 24th, 1930, W. L. Story, Sr., a citizen of Orange County, Florida, departed this life leaving surviving him his widow Martha J. Story who was then about fifty-six years of age; Kate Agnes Story Burch, a daughter, about thirty-three years of age; Lena M. Story, a daughter about thirty-one years of age; W. L. Story, Jr., a son then about twenty-five years of age, and Edward M. Story, a son then about thirteen years of age.

The deceased left a will which on March 31st, 1930, was produced by the First National Bank and Trust Company in Orlando, appellee, before the County Judge for Orange County for probate. The execution of the will was proved and admitted to probate.

The will was a very lengthy document consisting of approximately eleven pages of typewritten matter estimated by the copy of it appearing in the record in this case.

The first paragraph of the will exclusive of the formal recital that the testator was of sound mind and declaring the instrument to be his last will and testament revoking all former wills or codicils, directed that his just debts, if any, together with funeral expenses and such other expenses incident to his last illness should be fully discharged.

The second paragraph directed that ''all the rest, residue and remainder of my estate, personal and mixed, wherever and whatsoever it may be at the time of my decease, whether now held or hereafter obtained by me,

exclusive of the home in which I am then living and the property enclosed under the same general enclosure or fence being what is commonly termed my homestead, I do give, devise and bequeath unto First National Bank & Trust Company in Orlando, its successors or assigns, to have and to hold the same, but nevertheless in trust, and for the uses and trusts and for the purposes following, namely: (a) to be held, cared for, managed and invested and from time to time reinvested by said trustee, or its successors in trust, for the purposes hereinafter enumerated:'' The remaining part of the paragraph including sub-paragraphs (b), (c), (d), (e), (f), (g), (h), (i), (j) is devoted exclusively to the duties imposed upon the trustee, its powers concerning the management and distribution of the trust estate.

The remaining paragraphs, Third, Fourth and Fifth provide for the contingency which may arise from the action of the testator's widow in case she should not approve the terms of the will as they relate to her or her remarriage.

Paragraph Three expressed the desire of the testator that in the event of the remarriage of his widow that she accept as her part of the estate a child's part, and upon the distribution of the estate ''as provided in sub-paragraph (h) ''that the said trustee shall pay over to his widow a child's part'' in the event she then be living which shall be in lieu of all other provisions made for her under the terms and conditions of this my will.'' It might be well to quote at this point sub-paragraph (h) which is referred to above. It is as follows: ''(h) Upon the arrival of the youngest of my children at the age of thirty (30) years, should my beloved wife then be living, I then direct my said trustee to first set apart a sufficient sum to provide a liberal income for her during the remainder of her life, and thereafter to distribute among my said children, excepting that the share of Kate Agnes

Story Burch shall be retained by the trustee, share and share alike, the balance of said property which said distribution may be made in kind or cash as the best interest of my estate shall demand, each of said children being charged with the moneys theretofore advanced to them, if any, together with interest thereon. I direct my trustee in arranging the fund from which to provide income for my said wife, to set aside a sufficient sum to yield an income if possible in keeping with the amount by her required for living expenses as disclosed by the handling of my estate prior to said time. After her demise then I direct that the principal amount remaining of said fund be distributed among my said children as above provided. Or in the event property shall have been set aside and the income therefrom used, said property shall be given to my said children, share and share alike, as above provided, excepting that the share of my daughter Kate Agnes Story Burch, shall be retained by my trustees for administration as herein provided. Should my said wife's death occur prior to the time the youngest of my children shall have arrived at the age of thirty (30) years, then upon the arrival of the youngest of my said children at the age of thirty (30) years my estate shall be distributed among my said children, share and share alike, as herein provided.''

It is apparent from the language of paragraph three and sub-paragraph (h) that in the event Mrs. Story should remarry and accept, in accordance with the precatory words of the Third paragraph, as her part of the estate a child's part, the provisions of paragraph (h) relating to a liberal income for her during her life would be inapplicable to her then status as one of the distributees of the estate on the basis of a child's part.

The Fourth paragraph of the will made provision for the contingency that might arise in the event the provisions of the will should not be acceptable to Mrs. Story,

in which event the testator directed that 'the terms and conditions of my said will as hereinabove set forth are altered and changed as hereinafter provided, to-wit: (a) In such an event I direct that my said wife shall have set aside to her as a life estate one-third of my personal property and one-third of my real estate, which one-third of my real estate shall include the homestead on which my family is living at the time of my demise, and that the income from said personal property and real estate be . paid over to my wife so long as she shall live. Should it be objectionable to her to leave said personal property and real estate under the general direction of my trustee and executor hereinafter named, then she shall exercise such control over the same as provided by the statutes of the State of Florida relating to dower. Should my said wife prefer a child's part in my property, both real and personal and mixed, in lieu of the provisions hereinbefore made, then I direct that my said trustee and executor hereinafter named co-operate to the end that a child's part may be set aside to my said wife as required by the statutes of the State of Florida."

Under the terms of the constitution the homestead upon the death of the head of the family inures to the benefit of the widow and heirs of the deceased. See Sec. 2, Art. X, Constitution. The testator in this paragraph of the will in so far as it affected the homestead, sought to appropriate it or have it set apart as part of the widow's dower in the event she does not approve the provisions of the will and claims dower. That provision is inconsistent with the provisions of the constitution and statutes and against the doctrine announced in Palmer v. Palmer, 47 Fla. 200, 35 South. Rep. 983. That case definitely holds that "Where there is a child or children any will attempting to dispose of the homestead is utterly void for any purpose whatsoever in so far as such homestead is concerned." The effect of the constitution, said Mr. Chief

Justice Taylor speaking for the court, in so far as the homestead is concerned, where the relation of husband and wife exists, and where there is a child or children, is to compel such homestead to inure to the widow as widow, and to the heirs, unless the consent of the wife can be obtained to its alienation in the lifetime of the husband, and where such alienation does not take place, *compels intestacy* so far as such homestead is concerned by prohibiting its alienation by will. The exemptions provided by the constitution inures to the benefit of the heirs as well as the widow, yet the testator sought to direct that in the event the will should not be acceptable to the widow the homestead should be included in the one-third of his real estate which should be set apart to her for life. Assuming that her non-acceptance of the provisions of the will should take the form of a legal dissent under the terms of Section 5493, Compiled General Laws, 1927, it would not follow, if she chose dower, that in her one-third part of the real estate would be comprehended the dwelling-house together with the offices, out-houses, buildings and other improvements thereunto belonging, because the Judge to whom the application should be made might consider that the property could not be applied to the use of the widow without manifest injustice to the children or other heirs. In the event she chose a child's part, the estate was to be divided by setting apart to her at once a child's part in it.

The fifth paragraph of the will has the appearance of an attempt to coerce the widow into an acceptance of the provisions of the will in her behalf as contained in paragraphs numbered Second (2) and the sub-paragraph thereunder and paragraph numbered Third (3) because it provides that if she elects to pursue the course provided in paragraph numbered Fourth, then in such case the Trustee should exercise its discretion entirely in the employment of a manager or supervisor of the properties

and that W. L. Story, Jr., his son, should be excluded from the provisions set forth in paragraph numbered Second, and "I further direct that in lieu of the distribution provided in paragraph numbered Second, and subparagraphs thereof the following disposition be made of the rest, residue and remainder of my property, to-wit: Upon the arrival of the youngest of my children at the age of thirty (30) years I then direct my said trustee to distribute said property share and share alike, among my children, Lena M. Story, Edward R. Story and Kate Agnes Story Burch, retaining however the share of Kate Agnes Story Burch for administration as herein provided, and in every other particular, generally to administer this will as hereinbefore set forth, excepting that W. L. Story, Jr., shall be excluded from the terms hereof and the prior provisions of this will shall be construed as though he were not a devisee and legatee under the terms hereof."

In sub-paragraph (a) of the Second paragraph the testator requested the trustee to employ the services of the testator's son W. L. Story, Jr., as manager and supervisor of the properties, at a salary commensurate with the services required and in keeping with salaries paid to other persons engaged in similar undertakings. A discretion was vested in the trustee to dispense with the services of Mr. W. L. Story, Jr., in case the trustee should be of the opinion that "someone else would more efficiently and intelligently care for said properties."

The Sixth paragraph of the will is as follows: "Sixth, I hereby nominate and appoint First National Bank & Trust Company in Orlando, of Orlando, Orange County, Florida, the executor of this my last will and testament, and I do hereby authorize my said executor to sell, mortgage, release, and convey any and all of my property at public or private sale at any time or at any place and for any price and upon any terms as to cash or credit as it shall in its discretion deem proper, and I hereby vest in

my said executor all powers in respect to the sale and disposal of my estate which I might have personally exercised if living. It being my desire that my said executor shall not be embarrassed or circumscribed in its powers in the carrying out of the terms and conditions of this my will. I further direct that my said executor shall immediately upon qualifying as such make ample provision for the temporary support of my beloved wife, Mattie J. Story and that further provision be made from time to time for the maintenance of my said wife until the trustee shall qualify under the terms of this my will.''

No limitation of time was prescribed by the will within which period Mrs. Story might declare that the provisions made for her were not acceptable to her. It is true that the statute declares that such dissent shall be signified in the Circuit Court or County Judge's Court of the county wherein she resides at any time within one year after the probate of the will. In that event the statute prescribes that she shall be entitled to dower in the manner set out in the statute. See Sec. 5493, Com. Gen. Laws, 1927, and Sec. 5496, Compiled General Laws provides that in all cases in which the widow of a deceased person shall be entitled to dower, she may elect to take in lieu thereof a child's part. The provisons of sub-paragraph (a) of Paragraph Fourth however undertake to prescribe a manner in which she shall be entitled to dower, in case the terms of the will should not be acceptable to her, different from the manner prescribed by the statute. For instance: Under the will she should have as a life estate one-third of the testator's personal property. Under the statute she should have one-third part of the personal property ''in fee simple'' and the claim should have preference over all others, and the share shall be free from all liability for the debts of the decedent. See Sec. 5494, Com. Gen. Laws, 1927.

The will provided that the entire homestead should be

included in the widow's dower, while the statute provides only that the ''dwelling house in which her husband shall have been accustomed most generally to dwell next before his death, together with the offices, outhouses, buildings and other improvements thereunto belonging or appertaining'' shall be comprehended in·her third part of the lands, subject nevertheless to the judgment of the court that such application could be made ''without manifest injustice to the children or other heirs.'' Sec. 5493, Com. Gen. Laws, 1927, *supra.* The will then provides in Paragraph Fifth, that if Mrs. Story should elect to pursue the course provided for her in paragraph numbered Fourth, then her son W. L. Story, Jr., should be excluded from the provisions of the will and its provisions ''shall be construed as though he were not a devisee and legatee under the terms'' of the will. If the son were excluded as ''devisee and legatee'' from the terms of the will, his status as heir and child of the testator would not be affected so far as the homestead was concerned, as to which under the terms of the will his enjoyment of his part would be postponed to the death of his mother.

It therefore appears that it was in the mind of the testator, to place no limitation of time upon his widow within which she might declare that the provisions of the will as to her were not satisfactory.

May a man by will extend the statutory period within which his widow may declare that the provisions of the will in her behalf are not satisfactory to her?

The First National Bank and Trust Company obtained letters testamentary on March 31, 1930, and on July 7, 1931, Mrs. Story and the other appellants filed their bill in chancery in the Circuit Court for Orange County, making the First Bank and Trust Company in Orlando defendant in its capacity as Executor and as Trustee under the will. The purpose of the bill was to obtain a construction of the will as to the attempted creation of

a trust estate; to declare the attempted creation of the trust void; to enjoin the trustee from intermeddling in the ownership, control or business of any real or personal property belonging to the estate; to account to the complainants for all moneys received and expenses incurred, and be charged with losses, mismanagement and waste; to deliver possession of all property belonging to the estate to the complainants; to suspend the authority of the defendant as executor to have possession of the property of the estate and manage it and to appoint W. L. Story, Jr., or some other suitable person *pendente lite* to take possession of, control and manage the properties, and for general relief.

The bases upon which the relief was sought are that the business of the defendant as executor of the estate has been completed, all just debts of the testator and funeral expenses and other expenses incident to his last illness have been paid; the invalidity of the trust provisions of the will; the mismanagement of the property by the defendant in its capacity of trustee, its extravagance and waste of the properties; the disapproval by all of the complainants of the defendant as Trustee and their lack of confidence in it as trust agent of the complainants and its interest in their behalf, and the attempted squandering of the income and properties of the estate in fees for the executor and attorneys to the injury of the legatees, devisees under the will and beneficiaries of the attempted trust and because of the illegal provisions of the will relating to the attempted trust the deceased died intestate as to such properties to which his widow and children are entitled to the immediate possession, ownership and benefit.

On July 27, 1931, complainants applied to the Circuit Court for the appointment of a Receiver or Administrator *pendente lite* or Curator. Many affidavits were submitted as to the qualifications of Mr. W. L. Story, Jr., to manage

the properties of his deceased father's estate. Those affidavits were submitted to show Mr. Story's honesty, ability, good judgment and discretion as manager of the properties of the estate which consisted of citrus groves and ferneries, store building and dwelling houses. These properties require skillful management and good judgment in marketing its products, and maintaining tenants and collecting rents. The management also requires the employment of much labor, the purchase of fertilizers and agricultural implements and other conveniences and constant, intelligent and capable attention to keep the properties in profit and revenue producing condition.

Exceptions to certain portions of the bill were interposed by the defendant which also interposed a general demurrer to the bill. It also interposed a motion to strike certain portions of the bill, and a special demurrer directed to certain parts.

The court by an order dated July 10, but entered July 27, 1931, denied the complainants application for the appointment of a receiver, administrator *ad litem* or curator, without prejudice to make a further application at some subsequent term.

From that order the complainants appealed to this court making the appeal returnable September 30, 1931.

There seems to have been two applications by the complainants for an administrator *ad litem,* as the order recites that it denied the first application and the appeal was taken from that order.

Then on July 30, 1931, the complainants applied to this court for an order appointing an administrator *pendente lite* to take charge of the property involved in the suit pending the determination of this appeal. The ground being that the property was in the unrestricted control of the alleged trustee notwithstanding the record discloses that the trust under which the trustee assumes to act is void. It is contended that the trust is void, the executor

has completed its duties as executor and the complainants are entitled to the immediate possession and control of their properties as heirs of the testator.

It is also contended that the Trustee has failed to furnish security for the uninvested funds of the estate as required by Section 6128 Compiled General Laws, and the executor and trustee is wasting the property of the estate by using the entire income of the estate and more, in exorbitant charges for its services and attorney's fees.

It is contended that the trust sought to be created by the will offends against the rule against perpetuities, that the trust is for a longer period than is permitted under the laws of Florida, that estates tail are sought to be created which is forbidden by law, therefore the fee simple title to the lands is in the heirs of W. L. Story, Sr., yet the will deprives them of the enjoyment of the property for a period longer than a life in being and twenty-one years afterward plus the period of gestation and the trust is an accumulative one and required to continue for a period forbidden by law.

This court granted an injunction against the bank from making any disbursements for executors or attorneys fees under the will pending consideration of the appellants application and ordered the appellee bank to show cause on or before September 7th why an order should not be made appointing an administrator *pendente lite* to take charge of, manage and control the properties involved in the suit to the exclusion of the executor and trustee named in the will.

The appellee answered the rule and set forth in a very lengthy document to which were attached many exhibits, its defense to the effort of complainants to obtain possession and control of the properties involved in the trust.

A short synopsis of the answer would be unnecessarily long and serve little or no purpose in elucidating the question upon which the decision in this case must turn.

If the trust created or attempted to be created by the will is valid, then it seems to us that the relief sought by the complainants must fail, because even if the executor has completed its duties, that is to say paid all the debts of the deceased including the expenses incident to his last illness and funeral, the Bank in its capacity as Trustee *eo instanti* enters upon the control and management of the properties of the estate, as Trustee with duties and powers prescribed by the will. Whether there has been any extravagance on the part of the Executor or Trustee in allowances for fees for its services or those for its attorneys is a question which may be determined in appropriate proceedings by the beneficiaries of the trust against the Bank in the matter of an accounting and would not require the appointment of an Administrator *pendente lite*. The proceeding would be analogous to Roberts v. Roberts, 75 Fla. 603, 78 South. Rep. 666. It is generally accepted as good law that any person interested in an estate may cite the executor or administrator to file his account. It may be issued at the instance of an heir, legatee or creditor. See Main v. Brown, 72 Tex. 505, 10 S. W. Rep. 571, 13 Am. St. Rep. 923; Bendall v. Bendall, 24 Ala. 295, 60 Am. Dec. 469; Shurtleff v. Right, 56 W. Va. 582, 66 S. E. Rep. 710, 135 Am. St. Rep. 1041.

In view of the fact that it seems to be conceded that the Executor has completed its duties as such, and this proceeding is an attack upon those provisions of the will affecting the duties of Trustee, it may be regarded as *pro tanto* a contest of the will. In such case an application for the appointment of an Administrator *pendente lite* was proper. His powers would continue during the litigation and the pendency of an appeal. 11 R. C. L. 454.

It does not appear from the pleadings and exhibits submitted in the proceeding that an administrator *ad litem* is justified under our statute, Sec. 5528 Com. Gen. Laws, 1927, (3664 Rev. Gen. Stats.).

It is not sufficiently clear that the Bank as Executor is interested adversely to the estate. But it sufficiently appears that as Trustee it asserts the validity of all provisions of the will relating to the attempted creation of a trust, asserts its right and duty to take possession, control and management of the rest and residue of the estate, real and personal, that remains after the payment of debts. The Bank therefore in its capacity as Trustee places itself in a position antagonistic to the rights of the complainants who assert in the proceeding that the will is void as to the rest and residue of the estate remaining after the payment of debts because of the alleged illegal attempt to create of it a trust estate and therefore the complainants are entitled as heirs of the testator to an immediate distribution of the estate, because as to it in view of the illegal trust the testator died intestate. That position the Bank contests and by taking and holding possession of the properties withholds them from enenjoyment by the complainants who if their contention is right are entitled to possession and enjoyment of them.

Obviously in such case, the appointment of an administrator *pendente lite* is not only the appropriate course, but it was the duty of the court to appoint one pending the determination of the question, whether the provisions of the will relating to the trust are void. Indeed in such cases a court may of its own motion without notice to the parties appoint such an administrator. See 11 R. C. L. 454.

The bill filed in the Circuit Court was an attack upon the provisions of the will creating a trust estate of the rest and residue of the decedent's estate remaining after the payment of debts.

The various attacks upon the will were mainly directed against that contention. The issue was squarely presented to the court. It was within the jurisdiction of the court to hear and determine the question. The nature of the

case is such, the character of the estate, the possession by the defendant in opposition to the claimants' alleged right to a distribution of the estate under the laws of descent, make the appointment of an administrator *pendente lite,* imperative. The application while not technically correct as it sought the appointment of an administrator *ad litem* or curator, is nevertheless broad enough to be taken as an application for an administrator *pendente lite.* The language of the petition being that the court appoint ''a receiver, curator or administrator *ad litem* in the court's discretion, to handle the affairs and business control of said estate ad pendente lite.''

The court denied the application. The appeal is taken from that order, and complainants seek by that course to transfer to this court the question of the validity of the trust as to a court of original jurisdiction.

The Chancellor did not decide the real question in the controversy. He merely declined to appoint ''a receiver, administrator ad litem or curator,'' ''without prejudice to the right of the complainants to make further application at some subsequent time, if appropriate.'' That language strongly indicates that the court was retaining jurisdiction of the cause, would proceed in due course to determine the question on its merits, adjudicate the claims of the complainants and declare the provisions of this will relating to the Trust, valid or invalid, and proceed to a final decree.

So far as the record discloses the order was not based upon an adjudication of the case upon its merits, nor any consideration whatever of the question involving the validity of the trust.

It would be improper if indeed not without authority of law for this court to determine the merits of this controversy as an original cause in this court, which it would do if it passed beyond the order and took up the question upon its merits. The court below made no order upon

the various demurrers and motions addressed to the bill by the defendant in which the merits of the case were presented.

The answer interposed to the rule issued by this court goes deeply into the merits of the complainant's cause, whereas the only question now to be considered is whether in view of the contest of the will the appointment of an administrator *pendente lite* was proper and should have been made. For this court to determine on this application the validity of the provisions of the will creating the trust, is to exercise original jurisdiction, instead of appellate jurisdiction; to go over the head of the trial court to determine a question submitted to its jurisdiction and upon which it has expressed no opinion nor rendered any decree.

The first sub-paragraph to the first paragraph of the answer denies that the provisions of the will relating to the creation of the trust are void, and the remaining paragraphs are but variations of the same denial and denials of the defendant's maladministration of the trust. The answer is addressed to the bill of complaint filed in the Circuit Court. It presents disputable questions of fact peculiarly within the province of the Chancellor to determine even if he should hold the trust provisions of the will to be valid. It raises questions of law as to the equity contained in the bill, which were submitted to the Chancellor by demurrers and motions and which he expressed no opinion upon, and concerning which made no order, but expressly by his order reserved for future consideration as he retained jurisdiction of the cause and authorized the complainants to apply at some later time for the appointment of an administrator pendente lite, or such other appropriate relief.

We have made perhaps an unnecessarily lengthy statement of the provisions of the will, but it is done for the purpose of showing in part the many questions involved

in this controversy. We think that the bill presents meritorious questions not only affecting the validity of the will as to the trust provisions, but incidentally others affecting the inimical interests of the Bank as Executor and Trustee to those of the claimants. These and all such questions should be settled by the Chancellor and his decree on the merits brought here if desired on appeal.

The decree appealed from is reversed with directions to the Chancellor to appoint an administrator *pendente lite*, to be some suitable person not partisan to either side, but some intelligent, capable person who will preserve and manage the properties of the estate economically in the interest of the heirs or legatees pending the suit.

Order reversed.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

BROWN, J., dissents.

---

ON APPLICATION FOR REHEARING

WHITFIELD, J.—Section 11, Article V, Constitution, provides that the Circuit Courts shall have "supervision and appellate jurisdiction of matters arising before County Judges pertaining to their probate jurisdiction." Under the supervisory jurisdiction so conferred, a Circuit Court may under proper circumstances direct the County Judge as a court of probate to appoint, or it may itself appoint an administrator *pendente lite* whose duty it would be to report to the probate court, or as may be required under the law.

It is the duty of the appellate court on an appeal to reverse or affirm the decree of the court below or to give such decree as the court below ought to have given, or as it may appear according to law. Section 4637 (2918) Compiled General Laws, 1927; Schnabel v. Betts, 23 Fla. 178, 1 South. Rep. 692.

Pursuant to the above statute this court may on appeal direct the Circuit Court to make such order or decree as should be rendered.

In view of the nature of the litigation in the Circuit Court, shown by the opinion, as to the controversy over the administration of the estate and as to the validity and legal effect of the will of the decedent, it was under the above quoted organic provision, within the province of the Circuit Court to appoint an administrator *pendente lite* of the decedent's estate, whose duty it will be to make an accounting and report to the County Judge as a probate court, subject to the "supervision and appellate jurisdiction" of the Circuit Court.

The Circuit Court by order declined to appoint pending the litigation "a receiver, administrator *ad litem* or curator," but "without prejudice to the right of the complainants to make further application at some subsequent time, if appropriate." On appeal from such order this court may direct the Circuit Court to appoint an administrator pendente lite of the decedent's estate whose duty it will be to render appropriate accountings to the County Judge as a probate court, or as may be required under the law.

Rehearing denied.

TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS, J., concur in the opinion and judgment.