WALDEN, Judge
(dissenting):
Defendant was tried and found guilty of murder in the second degree. He appeals. I would reverse and remand for a new trial.
Eliminating much detail, the defendant’s wife was granted immunity and became the State’s chief witness. It is clear that defendant would not have been convicted except for her testimony. The defendant, his wife, and the victim were alone in the victim’s apartment, according to the wife. The wife testified (among other critically damaging items) that the defendant loaded a rifle, entered the victim’s bedroom and that she heard a shot. The defendant came back in her presence, re-loaded the rifle, returned to the victim’s bedroom, and she heard another shot. The defendant re *1027 turned to her presence and said, “Let’s go.” They ran from the house and she saw that defendant had the victim’s wallet and checkbook and there were bloodstains on the defendant’s face. Suffice to say, the victim was later found in the bedroom shot to death by a .22 calibre rifle.
The trial court admitted the wife’s testimony as to these events and in so doing construed the marital privilege as applying solely and only to communications — not to the defendant’s acts.
The critical point is correctly stated by the defendant:
“Whether the lower court erred in permitting the appellant’s wife to testify as to her husband’s conduct which fell within the scope of privileged communications as being acts clearly intended to be confidential communications, viz, the confidentiality between them was an actual inducing factor of appellant’s conduct and clearly interwoven and contemporaneous with the oral privileged communications between the spouses.”
I would hold that acts are encompassed within the marital communication privilege. The better rule and weight of authority is that the privilege of confidential communications between spouses includes acts as well as merely verbal communications. 97 C.J.S. Witnesses § 266 (1957); Wharton’s Crim.Evid. 13th Ed. § 568:
“§ 568. Knowledge obtained by observation of spouse.
“The husband-wife privilege extends, not only to a spouse’s communication, oral or written, but also to an act which is confidential in nature or which would not have been performed in the witness’ presence but for the marital relation. The privilege applies even though the observed spouse’s act amounted to or evidenced the commission of a crime.”
This general rule would be subject to the caveat that the acts be of such a confidential nature that they would not have been done in front of the witness-spouse except for the marital relation, Annot. 10 A.L.R.2d 1389 (1950):
“Most of the decisions as to whether a husband or wife may testify, under the marital communications privilege, to knowledge obtained by observation of the acts of the other spouse have turned upon whether the particular matter testified to, in view of the circumstances of the case, was learned by the witness through a ‘confidential communication,’ or ‘as a result of the marital relation.’ ”
What is the jurisprudence of Florida with reference to this question? The answer is “confused.” However, as I shall attempt to document, this is needlessly so.
Mercer v. State, 40 Fla. 216, 24 So. 154 (1898), is clear and controlling authority for the proposition that Florida embraces the majority view. It would not restrict the confidentiality rule to mere statements by one spouse to the other. Mercer stands for the proposition that the law prohibits a spouse from testifying as to any information and all knowledge gained from the other during and by reason of the existence of the marriage relation. This, of course, would include acts. Mercer, therefore, mandates a reversal in the instant appeal, cf. Anderson v. State, 297 So.2d 871 (2nd DCA Fla.1974).
For background and specificity, Mercer provides:
“Such confidential communications between husband and wife have always been regarded as privileged, and, when attempted to be detailed or divulged by either of the parties to whom the communication has been intrusted, the law not only forbids, and will not permit it to be done, but regards it as a character of testimony that such witnesses are not competent to depose, and upon the same ground that it prohibits the violation by an attorney of the confidence reposed in him by his client, — that of public policy. Society has a deeply-rooted interest in the preservation of the peace of families, and in the maintenance of the sacred institution of marriage; and its strongest safeguard is to preserve with jealous care any violation of those hallowed confidences inherent in, and inseparable from, the *1028 marital status. Therefore the law places the ban of its prohibition upon any breach of the confidence between husband and wife, by declaring all confidential communications between them to be incompetent matter for either of them to expose as witnesses. The reason of the old rule for rendering interested witnesses incompetent to testify at all in any case to which they were parties was because their interest was supposed to be such a strong incentive to perjury, and, where husband or wife was interested in a cause, both of them were excluded as incompetent witnesses for any purpose, because of their unity of interest; they, in the eye of the law, being regarded as one person, and whenever either was interested both were considered to be equally interested, and the incentive to perjury from such interest was considered to be as strongly operative upon the one as upon the other. But the reason of the rule for excluding the confidences between husband and wife as incompetent matter to be deposed by either of them, though they may be competent witnesses to testify to other facts, is found to rest in that public policy that seeks to preserve inviolate the peace, good order, and limitless confidence between the heads of the family circle so necessary to every well-ordered civilized society. The matter that the law prohibits either the husband or wife from testifying to as witnesses includes any information obtained by either during the marriage, and by reason of its existence. It should not be confined to mere statements by one to the other, but embraces all knowledge upon the part of either obtained by reason of the marriage relation, and which, but for the confidence growing out of it, would not have been known.” (Emphasis supplied.) Id., 24 So. at 157.
And now to block out a matter which is totally irrelevant to the instant issue, but which seems to have caused some confusion. Fla.Stat. 90.04 (1975) and 914.07 (1975),[1] and their predecessor statutes, have nothing to do with the rule concerning confidential communications between spouses and hence such statutes have nothing to do with the instant case. Mercer v. State, supra; Porter v. State, 160 So.2d 104 (Fla.1963); Ross v. State, 202 So.2d 582 (1st DCA FLa.1967).
The majority decision cites Gates v. State, 201 So.2d 786 (3d DCA Fla.1967); Ross v. State, supra; Porter v. State, supra, and Mercer v. State, supra, as a basis for affirmance and so a discussion of them is in order.
The Mercer holding has already been outlined and it obviously would require a reversal — not affirmance. Porter v. State, supra, has nothing whatever to do with the matter of confidential communications between husband and wife. It deals simply with Fla.Stat. 90.04 and 932.31, which statutes, as above mentioned, are irrelevant to the instant issue. I fail to see why Porter was cited.
Now, as to Gates v. State, supra, and Ross v. State, supra, I, with all respect to my colleagues on the First and Third District Courts of Appeal, submit that the decisions are unsound and in conflict with Mercer. In both cases the appellate court approved the trial court action in permitting a spouse to testify as to acts done by the other — over the defendant’s objection as to confidentiality.
It is further interesting — as a student of appellate court craft and draft — to note that in both cases it was said no error was committed. However, each opinion then redundantly and in contradiction thereto ended with the observation that such testimony was merely cumulative so that the admis *1029 sion was harmless and not sufficient to reverse.
More specifically, the entire Gates v. State, supra, holding is:
“The appellant contends that the trial court erred in permitting his wife to testify concerning a prior act of violence committed by him against the deceased child, on the ground that said testimony is inadmissible into evidence, falling within the husband and wife privilege. We disagree upon the authority of Porter v. State, Fla.1964, 160 So.2d 104.” Id. at 787.
As we have said and said, Porter has no bearing, and is not support for the Gates holding. Hence the Gates decision is without decisional support.
Ross v. State, supra, while agreeing that Fla.Stat. §§ 90.04 and 932.31 have no bearing, goes on to hold that the confidentiality rule does not apply to physical acts. In so doing it relies upon Gates (already discussed) and Porter. The treatment and support gained from Porter is curious. The Ross court agrees that confidential communication was not an issue in Porter and was not even mentioned. However, the Ross court reasoned that the Supreme Court would have reversed in Porter on its own motion as a matter of fundamental error, if it had intended for physical acts to constitute a confidential communication. Ross then startingly reasons that, since the Supreme Court did not so rule in Porter, that Porter stands for the proposition that physical acts do not constitute confidential communications.
I shall say only that I reject this approach. First, I am not so sanguine as to believe that an appellate court unfailingly treats each and every legal point whether raised or not and that its perfect silence on an issue not raised means that the unspoken issue has been considered and decided even though not mentioned in its opinion.
Assuming the desirability of the confidentiality rule, an assumption we must make since such rule has been approved by the Supreme Court, I can not find or make a reasonable distinction between acts and word communications.
So without laboring further, I would reverse on authority of Mercer. I would reject Ross and Gates, which conflict. Finally, there is no basis for finding waiver on the part of the defendant, Wharton’s Crim. Evid. 13th Ed. § 570.
For these reasons I respectfully dissent.

. Fla.Stat. § 914.07, which was previously 932.-31, provides:
“914.07 Competency of evidence. — Except as otherwise provided, the law regarding competency of evidence and witnesses in civil cases shall apply in criminal cases.”
Fla.Stat. § 90.04 provides:
“90.04 Witnesses; competency of wife or husband. — In the trial of civil actions in this state, neither the husband nor the wife shall be excluded as witnesses, where either the said husband or wife is an interested party to the suit pending.”